# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 7, 2005 Session

## STATE OF TENNESSEE v. TIMOTHY WADE DAVIS

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 69067   Richard Baumgartner, Judge**

**No. E2003-02162-SC-R11-CD  - Filed March 16, 2006**

We granted the defendant permission to appeal to consider whether the exact copy requirement of Tennessee Rule of Criminal Procedure 41(c)[1] applies to an affidavit that has been incorporated by reference into a search warrant.  Upon consideration, we hold that the exact copy requirement expressly applies to search warrants only and does not apply to incorporated affidavits. The record supports the trial court's finding that the defendant a copy of the search warrant was "identical in every respect" to the original search warrant.  Furthermore, even if the exact copy requirement expressly applied to affidavits, we would conclude, as did the Court of Criminal Appeals, that the insignificant differences between the original affidavit and the defendant's copy of the affidavit do not warrant suppression of the evidence.  For these reasons, we affirm the judgments of the trial court and Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined.   ADOLPHO A. BIRCH, JR., J., filed a dissenting opinion. CORNELIA A. CLARK, J., not participating.

Mark E. Stephens, District Public Defender; and John Halstead, Assistant Public Defender, for the appellant, Timothy W. Davis.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth T. Ryan, Senior Counsel, Criminal Justice Division, for the appellee, the State of Tennessee.

---

[1]In relevant part, Rule 41(c) provides: "The magistrate shall prepare an original and two exact copies of the search warrant, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with person or persons on whom the search warrant is served. . . ."

**Opinion**

## I.  BACKGROUND

The defendant, Timothy Wade Davis, was convicted by a Knox County jury of four counts of rape of a child and one count of aggravated sexual exploitation of a minor,[2] stemming from the defendant's sexual abuse of L.D.,[3] the young daughter[4] of the defendant's long time, close friends. The defendant had been a close friend of L.D.'s parents long before her birth**,** and he remained close friends with the family after her birth, regularly visiting the victim's home on weekends and vacationing with her family.  The defendant built a swing for L.D., played games with her, and from May 1997 to June 1999, he frequently obtained permission from L.D.'s parents to take her to the Fountain City Park to play.

In mid-1998, the defendant moved out of his parents' home and into a home he had purchased in Halls, Tennessee.  At the end of May 1999, L.D.'s mother learned that the defendant had taken L.D. to his home in Halls without obtaining permission from either of L.D.'s parents. During the last week in June 1999, L.D. made an inappropriate comment of a sexual nature which caused L.D.'s mother to suspect she had been sexually abused.  A few days later, L.D. told her mother that, rather than taking her to the Fountain City Park to play, the defendant had been taking her to his home and sexually abusing her.  After L.D. described the sexual abuse, L.D.'s mother immediately reported the allegations to the Knoxville Police Department.  The complaint was referred to Childhelp USA ("Childhelp").[5]

On July 13, 1999, L.D. met with a counselor at Childhelp USA and related specific information about the abuse, the existence and location of photographs the defendant had taken of the abuse, and the type and location of sexually explicit magazines, and movies the defendant kept

---

[2]Tenn. Code Ann. § 39-13-522 (2003) (rape of a child); Tenn. Code Ann. § 39-17-1005 (2003) (aggravated sexual exploitation of a minor).  The defendant received twenty-two-year sentences for each child rape conviction and a ten-year sentence for the aggravated sexual exploitation of a minor conviction.  The trial court ordered three twenty-two-year sentences and the ten-year sentence served consecutively for an effective sentence of seventy-six years.

[3]"It is our policy to refer to victims by their initials in child sex offense cases."  State v. Elkins, 102 S.W.3d 578, 580 n.1 (Tenn. 2003).

[4]L.D. was twelve years old at the time of trial, but she testified that she was six or seven when the defendant began touching her "private parts."

[5]Childhelp USA is a provider for the Tennessee Department of Children's Services.  See http://www.tennessee.gov/youth/dcsinfo/directory/provider.htm (last visited Mar. 6, 2006).  Childhelp USA provides mental health services through the Childhelp Children's Advocacy Center of Knox County, including assessment, crisis counseling, and follow-up counseling for child abuse victims and their non-offending family members. See http://www.childhelpusa.org/programs_counseling.htm (last visited Mar. 6, 2006).

at his home and displayed to the victim.[6]  Based upon this information, Detective Moore applied for and obtained a warrant to search the defendant's home.  On July 14, 1999, Detective Moore and other officers executed the search warrant at the defendant's residence.  In a night stand next to the defendant's bed, officers found a shoe box containing a large number of Polaroid photographs showing the defendant and L.D. nude and showing the defendant sexually abusing the victim.[7]  Underneath the workbench in the defendant's garage officers located a box of "pornographic magazines" of the "Penthouse and Playboy" type.  Officers also discovered a videotape of an adult movie during the search.

Before the search began, Detective Moore presented the warrant to the defendant, advised the defendant "what we were looking for," arrested and handcuffed him, and placed him in one of the patrol cars parked outside the defendant's home.  After the search began, Detective Perry Moyers advised the defendant of his Miranda[8] rights, asked him whether he would be willing to make a statement, and told the defendant they "needed to talk about what happened."  The defendant agreed to make a statement and told Detective Moyers, "You already know what happened."

Detective Moyers transported the defendant to the police station, where the defendant executed a written waiver of his Miranda rights and provided a statement.[9]  The defendant told Detective Moyers that his involvement with L.D. had been ongoing for about two months.  The defendant maintained that L.D. had found a box of Playboy magazines and asked him to take pictures of her.  The defendant admitted watching "dirty movies" with the victim, kissing the victim's belly button, touching her vagina with his fingers, attempting to penetrate her vagina with his penis, and placing his penis in the victim's mouth.  He also admitted to having taken photographs of these acts.  When asked why he had committed these criminal acts, the defendant responded that "he was lonely, he didn't date much, and hadn't had sex in ten years."  The defendant provided this

_____

[6]Detective Moore's trial testimony indicates that the information L.D. provided on July 13, 1999, was consistent with her trial testimony, which is surprising given that the interview occurred four years prior to the trial. It appears the inordinate delay in bringing this case to trial resulted from the defendant's refusal and unwillingness to cooperate with his attorneys.  In any event, at trial L.D. recounted that the defendant had exposed his penis to her, that he had penetrated her "front private" with his penis but that he had desisted when she complained of pain, that he had attempted penile penetration of her "back private," and that he had placed his penis in her mouth.  She recalled that these unlawful acts occurred "[a]bout every weekend" at the defendant's home and that the defendant used or had her use a Polaroid camera to take photographs "anytime something was done."  She related that the defendant had stored these photographs in a shoe box, which he kept in a night stand next to his bed.  She said the defendant had shown her these photographs each time she came to his house and also had shown her "Playboy" magazines containing pictures of "naked people" "posing for a camera," which he had stored in "a big box under his tool bench thing in his garage."  Although L.D. recalled the defendant showing her movies of "people having sex," at trial she could not remember where the defendant had stored these movies.

[7]Thirty-nine such photographs were introduced at the defendant's trial.

[8]Miranda v. Arizona, 384 U.S. 436, 479 (1966).

[9]The defendant objected to having his statement tape-recorded; however, another officer made notes as the defendant provided the statement and prepared a synopsis of the statement from these notes.

statement while the search of his home was ongoing. Although the defendant knew the victim had given the police information about the photographs he had taken, none of the photographs nor any of the other evidence seized during the search of the defendant's home was used during this interrogation.

Detective Moore interviewed the defendant again on July 15, 1999, at the Knox County Jail. After the defendant waived his <u>Miranda</u> rights, Moore confronted him with four sexually explicit photographs found during the search. The defendant identified the child in the photographs as the victim and admitted that he had taken the photographs.

Prior to trial, the defendant moved to suppress the evidence seized from his residence and the statements he had given to Detective Moyers and Detective Moore. As grounds for suppression, the defendant argued that the officers had failed to provide him an exact copy of the affidavit supporting issuance of the search warrant and had thereby violated the exact copy requirement of Tennessee Rule of Criminal Procedure 41(c), which provides that "[t]he magistrate shall prepare an original and two exact copies of the search warrant, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with person or persons on whom the search warrant is served. . . ." The defendant further argued that his statements resulted directly from the invalid search and therefore should also be suppressed as the fruit of the poisonous tree.

At the hearing on the motion to suppress, the trial court compared the original search warrant and the original incorporated affidavit to the defendant's copy of the search warrant and incorporated affidavit. The trial court acknowledged that the defendant's copy of the affidavit differed from the original affidavit. The line provided for the magistrate's name was blank on the original affidavit but completed on the defendant's copy of the affidavit.[10] Both the original affidavit and the defendant's copy contained the following handwritten revisions: (1) the words "inappropriate sexual" have been inserted on page one in the first sentence of the last paragraph on page one; (2) the word "of" also has been inserted in the first sentence of the last paragraph on page one; and (3) a misspelling of the word "brag" as "bragg" on page three has been corrected by striking the second "g". However, the initials "L.G.M." appeared next to these revisions on the defendant's copy of the affidavit but were not present on the original affidavit.

The trial court acknowledged that the defendant had not been provided an exact copy of the original affidavit. However, the trial court pointed out that the defendant received a copy of the search warrant that was "identical in every respect" to the original search warrant. Therefore, the trial court refused to suppress the evidence seized during the search of the defendant's home, explaining that the "fortuitous language incorporating the affidavit does not invalidate the search warrant" under Rule 41(c)(3). Having found no illegality, the trial court refused to suppress the defendant's statements as fruit of the poisonous tree.

---

[10]The original affidavit provided "LARRY MOORE, (affiant) after having been first duly sworn personally appeared before me_____Judicial Commissioner of General Session Court of Knox County, ...." On the defendant's copy Magistrate Hoover's name had been written on the line provided.

The Court of Criminal Appeals affirmed the trial court's decision, but on different grounds. The intermediate appellate court held that Rule 41(c)'s exact copy requirement applies to an incorporated affidavit and concluded that the defendant had shown a technical violation of this requirement by showing he did not receive an exact copy of the affidavit. Nonetheless, the intermediate court pointed out that "insignificant discrepancies" between the original affidavit and the defendant's copy of the affidavit neither expanded the scope of the search, nor cast doubt upon the existence of probable cause to support the search, or in any way affected the "'purity of the search.'" Thus, the Court of Criminal Appeals opined that "suppression of the evidence due to the insignificant variances under these facts would, in our opinion, be hyper-technical and counter-productive."

In a separate concurring opinion, Judge Joseph M. Tipton pointed out that a violation of Rule 41(c) would not necessarily require suppression of the defendant's statements because the police had probable cause independent of the search to arrest and to question the defendant about the information the victim had provided to them.[11]

We granted the defendant permission to appeal to consider whether the trial court and Court of Criminal Appeals erred by refusing to grant the defendant's motion to suppress.[12]

## II. ANALYSIS

### A. Standard of Review

This appeal presents a question of law: whether an affidavit incorporated by reference into a search warrant is subject to the exact copy requirement of Rule 41(c). We review this question of law de novo and accord no presumption of correctness to the lower courts' conclusions. Studdard v. State ___ S.W.3d __, __, 2005 WL 3192279, *2 (Tenn. 2005).

---

[11]Judge Tipton also concluded that the defendant had failed to establish a violation of Rule 41(c). Judge Tipton pointed out, correctly, that the defendant introduced only the copy of the affidavit officers left at his residence and the original affidavit that had been attached to the original warrant and returned by the executing officer to the General Sessions Court. Judge Tipton therefore concluded that "the record does not reflect that the copies of the affidavits in the record are those required by Rule 41(c) to be identical." However, our review of the record of the suppression hearing reveals that the trial court, the defendant, and the State agreed that the original affidavit filed with the General Sessions Court was identical to the copy that Rule 41(c) requires the magistrate to retain. Thus, we conclude that the record is sufficient to review this issue.

[12]As he did in the Court of Criminal Appeals, the defendant raised five issues in his application for permission to appeal to this Court. Having thoroughly reviewed the record, we affirm the judgment of the Court of Criminal Appeals on the remaining four issues. In particular we conclude that (1) the trial court did not err by refusing to instruct the jury on the affirmative defense of insanity; (2) the trial court did not err in finding the defendant competent to stand trial; (3) the trial court did not err in refusing to permit the defendant to represent himself at trial; and (4) the trial court did not err in sentencing of the defendant.

## B. Tennessee Rule of Criminal Procedure 41

Rule 41(c) provides as follows:

A warrant shall issue only on an affidavit or affidavits sworn to before the magistrate and establishing the grounds of issuing the warrant. If the magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, the magistrate shall issue a warrant identifying the property and naming or describing the person or place to be searched. . . . The magistrate shall prepare an original and two exact copies of the *search warrant*, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with person or persons on whom the search warrant is served. . . . Failure of the magistrate to make said original and two copies of the *search warrant* or failure to endorse thereon the date and time of issuance and the name of the officer to whom issued, or the failure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.

(Emphasis added.) In this Court, the defendant correctly points out that Rule 41(c) requires that he be provided an exact copy of the "search warrant." The defendant interprets the term "search warrant" to include affidavits that are incorporated by reference into the search warrant. The State disagrees and points out that Rule 41(c) applies by its terms to the "search warrant" and does not apply to the incorporated affidavit. Alternatively, the State asserts that even were this Court to find the search invalid under Rule 41(c), the defendant's statements need not be suppressed because the statements did not stem from the violation. We agree with the State's arguments and hold that the lower courts properly refused to grant the defendant's motion to suppress.

Tennessee law is settled that an affidavit is not considered part of a search warrant, even though the affidavit is integral to the issuance of a search warrant and often appears on the same printed form as the warrant. Rather, an affidavit contains the information that a magistrate considers when determining whether probable cause exists to support issuance of the requested warrant. See State v. Henning, 975 S.W.2d 290, 296 (Tenn. 1998); Hampton v. State, 252 S.W. 1007, 1009 (Tenn. 1923); State v. Lowe, 949 S.W.2d 300, 303-04 (Tenn. Crim. App. 1996). Tennessee courts consider incorporated affidavits when determining whether a search warrant was issued upon probable cause. Lowe, 949 S.W.2d at 303 (citing United States v. Blakeney, 942 F.2d 1001, 1024 (6th Cir. 1991)). However, Tennessee courts have not regarded incorporated affidavits as part of search warrants for purposes of Rule 41(c).

Indeed, we previously have rejected such an argument. In Henning, we considered the defendant's argument that the warrant was invalid under Rule 41(c) because the underlying affidavit had not been attached to or filed with the warrant. Like the warrant at issue in this case, the warrant in Henning included a printed reference to the affidavit. We held that the requirements of Rule 41(c)

apply to warrants only and do not apply to affidavits, stating:

> The defendant next contends that the warrant was invalid because the underlying affidavit was not attached to nor filed with the warrant. We disagree. While an affidavit must be retained in order to ensure subsequent judicial review of the probable cause determination, there is no statute or rule in Tennessee which requires an affidavit upon which a search warrant is issued to be attached or otherwise kept with the warrant. State v. Smith, 836 S.W.2d 137, 141 (Tenn. Crim. App. 1992). *Rule 41(c), Tenn. R. Crim. P., contains mandatory recording and filing requirements for warrants, but not for affidavits. The affidavit is not considered part of the search warrant in this State even if it appears on the same printed form as the warrant.* Minton v. State, 186 Tenn. 541, 212 S.W.2d 373 (1948); Hampton, supra. Therefore, the fact that the affidavit here was not attached to the warrant is inconsequential. The magistrate maintained a copy of the affidavit, and it was made a part of the record at the hearing on the defendant's motion to suppress. There is a printed reference on the search warrant to the affidavit made by Capt. Thomas Coleman. The affidavit reflects that it was sworn to before the general sessions court judge of Madison County on October 21, 1993, the same date that the warrant issued. This issue is without merit.

975 S.W.2d at 296 (emphasis added). We reaffirm our decision in Henning and hold that the requirements of Rule 41(c) apply to warrants only and do not apply to affidavits.

Not only is this conclusion consistent with the express language of Rule 41(c), it also is consistent with the distinct purposes served by warrants and affidavits. Warrants serve to provide law enforcement officials and persons subject to such warrants with written evidence that the search has been authorized by a judicial officer upon a showing of probable cause. Warrants also serve to define and to limit the duration and scope of authority of law enforcement officials by delineating the specific date and time of issuance of the warrant and by describing with particularity the premises to be searched and the items subject to seizure. Indeed, as we have previously explained, Rule 41(c) is designed

> to prevent improper searches and facilitate judicial review of whether a search was executed within the scope of the warrant. The rule achieves its goals in that a written record of the specifics of the search stifles the ever-present temptation for an officer to conduct a search and justify it later. Additionally, the copy of the warrant enables review of the original boundaries of a search; without an exact copy of the warrant, review is compromised because the critical facts and details of the warrant cannot be precisely determined. It is for these reasons that it is important to retain an exact copy of the warrant identifying the property or person to be searched, and it is for these same reasons that this requirement has been strictly enforced by our courts for many years.

State v. Coffee, 54 S.W.3d 231, 233-34 (Tenn. 2001); see also Talley v. State, 345 S.W.2d 867, 869 (Tenn. 1961) (discussing predecessor statute and stating that its requirements were intended "to secure the citizen against carelessness and abuse in the issuance and execution of search warrants"). While the exact copy requirement of 41(c) clearly advances the purposes served by warrants, this provision has little, if any, relevance to affidavits. Once the magistrate reviews the affidavit and determines that probable cause exists, the warrant defines the parameters of the search. The affidavit becomes relevant again only if a defendant challenges the magistrate's probable cause determination. The relevant question for courts deciding such challenges is whether the information contained in the affidavit sufficiently established probable cause. Obviously, to answer this question reviewing courts consider the affidavit the magistrate reviewed. Thus, neither the language of Rule 41(c), which refers to a "search warrant," nor the distinct purposes served by warrants and affidavits support the defendant's assertion that the exact copy requirement applies to incorporated affidavits. Finally, we note that in adopting Rule 41(c), Tennessee, "like other states, has imposed requirements that go beyond constitutional requirements." State v. Stepherson, 15 S.W.3d 898, 902 (Tenn. Crim. App. 1999) (citing LaFave, Search & Seizure, § 4.12 (3d ed. 1996)). Extending the application of this non-constitutional requirement beyond its express terms is not warranted. Therefore, we conclude that the defendant has failed to show a violation of Rule 41(c). As the trial court found, the defendant's copy of the search warrant was "identical in every respect" to the original search warrant. This satisfies the exact copy requirement of Rule 41(c).[13]

Moreover, even if Rule 41(c) expressly applied to affidavits, we would conclude, as did the Court of Criminal Appeals, that the differences between the original affidavit and the defendant's copy of the affidavit were not sufficiently significant to warrant suppression of the evidence. In our view, this case is analogous to State v. Gambrel, 783 S.W.2d 191, 192 (Tenn. Crim. App. 1989) perm. app. denied (Tenn. 1990), where, "[e]ither because a felt tip pen was used or because the carbon paper was worn, the written portion of the issuing judge's copy of the affidavit and search warrant" were "barely legible." Id. at 191. The trial judge suppressed the evidence seized under the warrant, finding that the illegible copy failed to satisfy the exact copy requirement of Rule 41(c). The Court of Criminal Appeals reversed and held the illegible carbon copy sufficient to comply with the exact copy requirement of Rule 41(c) because the defendant had neither questioned the authenticity of the original warrant nor alleged prejudice resulting from the magistrate retaining an illegible copy.[14] This Court cited Gambrel with approval in Coffee, 54 S.W.3d at 234 n.4.

---

[13]We agree, however, with the trial court and the Court of Criminal Appeals that questions concerning whether a defendant has been provided an exact copy of a warrant will not arise if the officer copies the warrant and the affidavit after the Magistrate has signed and completed the materials rather than having the Magistrate sign multiple copies of the materials, which is what occurred in this case.

[14]The intermediate court in recognized:

> The purpose of having the magistrate retain a copy of the search warrant is to insure the purity of the search process. For example, any alteration of the original warrant can be detected by comparison with the copy retained by the magistrate. The copy retained by the magistrate also gives the judge control to insure that the warrant is executed and

Here, as in <u>Gambrel</u>, the insignificant differences between the original affidavit and the defendant's copy neither compromised the integrity of the search nor undercut the purposes Rule 41(c) is designed to serve. Like the defendant in <u>Gambrel</u>, the defendant in this case has neither challenged the authenticity of the original search warrant nor claimed that the affidavit was insufficient to support a finding of probable cause, or alleged prejudice based on the his failure to receive an exact copy of the affidavit. Therefore, even if Rule 41(c) expressly applied to affidavits, we would conclude, as did the Court of Criminal Appeals that the differences between the original affidavit and the defendant's copy of the affidavit are not sufficiently significant to warrant suppression of the evidence.

## IV. Conclusion

Having concluded that the exact copy requirement of Tennessee Rule of Criminal Procedure 41(c) applies to search warrants only and does not apply to incorporated affidavits and having determined that the defendant received an exact copy of the search warrant, we affirm the lower courts' denial of the defendant's motion to suppress. Furthermore, even if the exact copy requirement expressly applied to affidavits, the insignificant differences between the original affidavit and the copy of the affidavit provided to the defendant would not warrant suppression of the evidence. For these reasons we affirm the lower courts' denial of the defendant's motion to suppress. With respect to the other issues raised by the defendant in his application, we agree with the Court of Criminal Appeals and affirm the defendant's convictions and sentences. It appearing that the defendant is indigent, the costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, CHIEF JUSTICE

---

returned to the magistrate in a timely manner, as required by T.C.A. § 40-6-107.

<u>Gambrel</u>, 783 S.W.2d at 192 (footnote omitted).