**File Name: 06a0392n.06**
**Filed: June 5, 2006**
**No. 05-5598**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **Plaintiff-Appellee,** | ) | **COURT FOR THE** |
| | ) | **EASTERN DISTRICT OF** |
| **v.** | ) | **TENNESSEE** |
| | ) | **(No. 04-CR-00137)** |
| **BRUCE EDWARD LAWSON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

BEFORE:     RYAN, COOK, Circuit Judges; and GWIN, District Judge.[*]

Gwin, District Judge:

On April 12, 2005, Defendant-Appellant Bruce Edward Lawson was convicted of being a felon in possession of a weapon and possessing marijuana with intent to distribute. Bradley County, Tennessee police officers provided most of the evidence used to convict Lawson from evidence seized during a search of the Defendant's residence. With this appeal, Lawson seeks reversal of his conviction. He argues that Judge R. Allan Edgar of the U.S. District Court for the Eastern District of Tennessee erred in denying Lawson's motion to suppress that evidence. For the reasons that follow, we **AFFIRM** the decision of the district court.

### I. Background

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

On the evening of September 18, 2003, patrol officers from the Bradley County Sheriff's Department responded to a domestic violence complaint at the home of Peggy Lawson, Defendant Lawson's ex-wife. After the officers arrested the Defendant on a domestic violence charge, Peggy Lawson told the officers that the Defendant stored several items of stolen property in or around her residence, including a Harley Davidson trailer, an air conditioner, and a picnic table. Upon learning of the stolen property, the officers summoned Detective Bill Coultry to the scene, and Peggy Lawson repeated her statement to Detective Coultry. (Suppression Hr'g Tr. 8:1-8:14, J.A. at 80.) Aside from informing the officers about the stolen property, Peggy Lawson also warned the Officers that earlier that evening the Defendant had threatened to kill his girlfriend, who she believed was at the Defendant's trailer on Bromley Drive in Cleveland, Tennessee. (Suppression Hr'g Tr. 11:6-11:8, J.A. at 82.)

After leaving Peggy Lawson's residence, the officers went to Defendant Lawson's trailer to check on the welfare of his girlfriend. They knocked on the glass French doors of the trailer but no one responded. Through the doors, the officers observed a partially unrolled section of carpet, a Shop-Vac vacuum cleaner, and some other items that had been thrown on the floor. The officers recognized these items as matching the description of stolen property from a report they took earlier that night.[1] (Suppression Hr'g Tr. 11:15-11:18, 13:19-13:22, J.A. at 82, 84.) Based on this information, Detective Coultry sought a search warrant for Defendant Lawson's trailer.

At 11:30 a.m. on September 19, 2003, Judge C. Van Deacon authorized the requested search

---

[1] According to the officers, the owner of the stolen carpet had given them a sample piece of the carpet and the sample appeared to match the partially unrolled carpet. (Suppression Hr'g Tr. 13:17-13:18, J.A. at 84.)

warrant. On its face, the warrant broadly authorized the officers to search for "stolen property." (Search Warrant, J.A. at 43.) However, the warrant also expressly incorporated by reference Coultry's accompanying affidavit. In that affidavit, Coultry defined the stolen property as "gray colored carpet, ten kitchen cabinets, white kitchen sink, Delta faucet, three foot fluorescent light, and a range hood." (Coultry Aff. Dec. 19, 2003, J.A. at 44.)

The officers maintain, and their records show that they executed the search right after obtaining the warrant, at approximately 11:40 a.m. on September 19, 2003.[2] (J.A. at 46-60.) At that time, Detective Coultry returned to Lawson's residence with two copies of the search warrant and the affidavit. (Suppression Hr'g Tr. 17:15-18:1, 35:16-36:5, J.A. at 87-88, 95-96.) During the search, the officers found in plain view several pounds of marijuana and three sets of digital scales. They also found a twelve gauge shotgun. At the time he found the shotgun at Lawson's residence, Detective Coultry knew that the Defendant was a convicted felon who was disqualified from possessing a firearm. Aside from the marijuana and the shotgun, which served as the basis for the instant conviction, the officers also discovered and seized approximately 250 additional pieces of stolen property. After retrieving this property, the officers were able to solve eighty-two home burglaries that had occurred in the Bradley County area.

In his motion to suppress the marijuana and shotgun, the Defendant argued that: (1) the

---

[2] According to the Defendant, the officers actually began searching his trailer on the morning of September 19, 2003, before obtaining a warrant. As support for this claim, the Defendant points to police photographs, taken inside the trailer, that have date and time stamps indicating that they were taken prior to the time that Coultry obtained the warrant. At the suppression hearing, Detective Coultry testified that the time stamp on the camera was incorrect. However, at the same hearing, two defense witnesses, Amy Paris and Tammy Barnes, also testified that they had seen officers going into the Defendant's trailer on the morning of the 19th. The district court found Detective Coultry's testimony to be credible and the Defendant does not appeal this finding.

search warrant was overly broad on its face; (2) the officers executed the search before obtaining

the warrant; (3) the officers searched the Defendant's car without a warrant; (4) the affidavit in

support of the warrant to search the Defendant's trailer was defective; and (5) the officers did not

leave a copy of the affidavit with the Defendant.

After conducting a hearing on November 23, 2004, Judge Edgar denied the defendant's

motion. Defendant Lawson subsequently pleaded guilty and was convicted of being a felon in

possession of a firearm and possessing marijuana with the intent to distribute. With his plea,

Lawson reserved his right to challenge the denial of his motion to suppress. This appeal followed.

## II. Legal Standard

"When reviewing decisions on motions to suppress, this court will uphold the factual

findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*."

*United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (citing *United States v. Leake*, 998 F.2d

1359, 1362 (6th Cir. 1993)). We view the evidence in a light most favorable to the district court's

conclusions. *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir.1997).

## III. Analysis

With the instant appeal, the Defendant does not contest the Government's contention that

the searching officers observed the marijuana and shotgun in plain view once they entered the trailer.

Instead, the defendant argues that the seizure of that evidence violated his Fourth Amendment rights

because the underlying search itself was illegal. Specifically, the Defendant contends that: (1) the

search warrant was overly broad as issued and as executed; (2) the executing officers did not leave

a copy of the affidavit in support of the search warrant either with the defendant or at his home, in

violation of either Federal or Tennessee Rule of Criminal Procedure 41; and (3) Judge Edgar erred

in determining that it was not necessary for him to determine whether the officers had included false

information in the affidavit on the ground that the affidavit supported probable cause even after the

allegedly false information was redacted. We address each argument below.

*A. Facial Validity of the Search Warrant*

The Defendant argues first that the search warrant was invalid on its face because it states

only that the officers were to search for "stolen property." According to the Defendant, this

description does not meet the Fourth Amendment's particularity requirement. In response, the

Government maintains that any defect in the warrant itself was cured by the express incorporation

of Coultry's affidavit.

The Fourth Amendment to the United States Constitution directs that a search warrant must

describe with particularity the place to be searched and the persons or items to be seized. This

constitutional protection prevents the issuance of general warrants, which "create a danger of

unlimited discretion in the executing officer's determination of what is subject to seizure." *United*

*States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir.1985). Therefore, a warrant that fails to conform

to the particularity requirement of the Fourth Amendment is invalid. *Groh v. Ramirez*, 540 U.S. 551,

557 (2004). This Circuit has adopted the express incorporation rule to cure an overly broad warrant

under certain circumstances. According to the incorporation doctrine, "[a] search warrant may be

construed with reference to a supporting affidavit if the affidavit accompanies the warrant and the

warrant incorporates the affidavit by reference." *United States v. Blakeney*, 942 F.2d 1001, 1024

(6th Cir. 1991).

In the instant case, the search warrant expressly stated that Coultry's affidavit was "[a]ttached hereto and specifically incorporated herein by reference for its contents and descriptions as if set out verbatim." (Search Warrant, J.A. at 43.) To the extent that the warrant's description of the items to be seized was overly broad, the specific list of stolen items contained in Coultry's affidavit cures this defect. In the affidavit, Coultry describes the stolen property as "gray colored carpet, ten kitchen cabinets, white kitchen sink, Delta faucet, three foot fluorescent light, and a range hood." (Coultry Aff. Dec. 19, 2003, J.A. at 44.) The affidavit also lists white book shelves and the roll of carpet.

The Defendant claims that the express incorporation rule should not apply in this case because the officers did not include a copy of the affidavit with the warrant that they left at the Defendant's residence. As a result, the Defendant claims that the affidavit does not "accompany" the warrant. *See Groh*, 540 U.S. at 557-58. This argument fails. The main reason that the affidavit must accompany the warrant is to inform the person whose property is subject to the warrant as well as the officers executing the warrant of the permissible scope of the search. In the instant case, the affidavit accompanied the warrant *during* the search and the officers were aware of the affidavit's specific description of the stolen items covered by the warrant. As a result, the purpose of the particularity requirement was fulfilled – the officers knew the permissible parameters of the search. *See United States v. Gahagan*, 865 F.2d 1490, 1497-98 (6th Cir. 1989) (holding that a supporting affidavit could cure an overly broad warrant even though the affidavit was not attached to the warrant because the affidavit was available to the officers during the search).

The search warrant expressly incorporated Coultry's affidavit, which describes with

particularity the items covered by the warrant. While the officers did not leave a copy of the affidavit with the Defendant, at least one copy did accompany the warrant during the search. We therefore find that the incorporation doctrine applies and that the warrant was facially valid.

*B. Execution of the Warrant*

The Defendant also argues that even if the warrant itself was valid, the officers violated the Defendant's Fourth Amendment rights by exceeding the scope of the warrant when executing the search. As an initial matter, we note that because the officers were executing a valid search warrant, they had authority to seize any items of an incriminatory nature that were discovered in plain view. *See Texas v. Brown*, 460 U.S. 730, 741-42 (1983) ("[S]eizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.") (emphasis removed)(quotation omitted). For the plain view exception to apply, the evidence must be (1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from which it could be seen; and (4) seized by an officer who has a lawful right of access to the evidence itself. *See Jenkins*, 124 F.3d at 774; *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997); *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994). The "immediately apparent" standard "does not demand an unduly high degree of certainty." *Calloway*, 116 F.3d at 1133 (quotation omitted). In the instant case, the officers entered the Defendant's residence pursuant to a valid search warrant. The government maintains that once inside, the officers discovered the marijuana and firearm in plain view.

Typically, when criminal defendants seek suppression of evidence, the defendants argue that

the particular evidence used against them in support of their convictions was unlawfully seized. In

the instant case, however, the Defendant does not argue that the seizure of the marijuana or firearm

in and of itself violated the Fourth Amendment. Indeed, the Defendant does not contest the

Government's assertion that the officers discovered those items in plain view. Nor does the

Defendant claim that the incriminating nature of these items was not immediately apparent. Instead,

the Defendant argues that the officers acted with such flagrant disregard for the terms of the warrant

when executing the search that they essentially converted the search into an "invalid general search."

*See United States v. King*, 227 F.3d 732, 751 (6th Cir. 2000). According to the Defendant, such

circumstances call for the suppression of all evidence seized in connection with the search, including

evidence that was lawfully seized pursuant to the warrant or to a warrant exception such as the plain

view doctrine. *See United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978); *United States v. Medlin*,

842 F.2d 1194 (10th Cir.1988).

For reasons unbeknownst to this Court, the Defendant failed to present this issue to the

district court. Appellate courts typically do not consider issues or arguments raised for the first time

on appeal. In *Estate of Quirk v. Commissioner*, 928 F.2d 751, 758 (6th Cir. 1991), we adopted the

Tenth Circuit's explanation of the rationale behind this rule, as follows:

> Propounding new arguments on appeal in attempting to prompt us to reverse the trial
> court – arguments never considered by the trial court – is not only somewhat
> devious, it undermines important judicial values. The rule disciplines and preserves
> the respective functions of the trial and appellate courts. If the rule were otherwise,
> we would be usurping the role of the first-level trial court with respect to the newly
> raised issue rather than reviewing the trial court's actions. By thus obliterating any
> application of a standard of review, which may be more stringent than a *de novo*
> consideration of the issue, the parties could affect their chances of victory merely by
> calculating at which level to better pursue their theory. Moreover, the opposing party

> would be effectively denied appellate review of the newly addressed issue, save in the rare instances of Supreme Court review. In order to preserve the integrity of the appellate structure, we should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be mounted for the first time.

(quoting *Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.*, 820 F.2d 338, 344 n. 5 (10th Cir. 1987)); *see also Taft Broad Co. v. United States*, 929 F.2d 240, 243-44 (6th Cir. 1991) ("As a rule, this court declines to entertain arguments not presented in the first instance to the district court."(quoting *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 477 (6th Cir. 1990))).

The rationale behind this rule is particularly applicable to a case such as this, where the Defendant had a full opportunity to raise any argument related to the execution of the search at the district court level and offers no explanation for his failure to do so. *See Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 589-90 (6th Cir. 2002) (declining to address a new argument on appeal because the Defendant had knowledge of and opportunity to assert the new theory at the district court level).

Moreover, resolution of this issue would require this Court to make factual determinations that it is not in the position to make. *See Taft*, 929 F.2d at 244 ("The fact that the issue newly raised on appeal requires or necessitates a determination of facts is generally deemed good reason to refuse consideration of the issue for the first time in the appellate court."). The record is nearly devoid of evidence that would be necessary for this Court to fairly evaluate the Defendant's argument. The Defendant now contends that the Officers treated the search as a fishing expedition, randomly seizing many items from his trailer without knowledge of whether the items were actually stolen. However, because the Defendant did not raise this argument below, the Government had neither

reason nor opportunity to present evidence showing that it did have the required probable cause to believe that the seized items were stolen. Nor did the district court have the opportunity to review this issue and make the necessary findings of fact. As a result, the record states very little about the nature of the additional items that were seized in the search, other than that their recovery led to the closing of approximately eighty-two burglary cases. Therefore, we will not consider the Defendant's argument that the officers impermissibly exceeded the scope of the warrant when executing the search.

## C. Failure to Leave a Copy of Coultry's Affidavit

The Defendant next claims that the searching officers violated Rule 41 of either the Federal or Tennessee Rules of Criminal Procedure by failing to leave a copy of Coultry's affidavit with the warrant they left at the Defendant's residence. According to the Defendant, this alleged violation provides grounds for the suppression of the marijuana and shotgun. The Government maintains that it complied with Rule 41. In the alternative, it argues that even if we find a violation of Rule 41, it should not result in the suppression of evidence as the Defendant was not prejudiced by the omission.

At the outset, we note that Federal Rule of Criminal Procedure 41 does not apply because no federal officer assisted in the search of Lawson's trailer.[3] *See United States v. Bennett*, 170 F.3d

---

[3] In its order denying the Defendant's motion to suppress, the district court noted that Federal Rule of Criminal Procedure 41 does not apply in the instant case. The court then determined that even if it did apply, no violation warranting suppression of the evidence occurred in this case. The district court did not, however, consider whether or not the officers violated Tennessee Rule of Criminal Procedure 41, despite the fact that the Defendant raised this argument. The Tennessee Rule is not identical to its federal counterpart. As such, we review the officers' compliance with Tennessee Rule of Criminal Procedure 41 herein.

632, 635 (6th Cir. 1999). Moreover, "the validity of a search warrant obtained by state officers for

seizure of evidence ultimately used in a federal prosecution turns only on" constitutional and state

criminal procedure requirements. *Id.* at 635-636 (citing *United States v. Shields*, 978 F.2d 943, 946

n. 5 (6th Cir.1992)).

> Rule 41(c) of the Tennessee Rules of Criminal Procedure states in relevant part:
>
> The magistrate shall prepare an original and two exact copies of the *search warrant*, one of which shall be kept by the magistrate as a part of his or her official records, and one of which shall be left with person or persons on whom the search warrant is served. . . . [F]ailure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served, shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.

(Emphasis added). In *State v. Davis*, the Tennessee Supreme Court clarified that this rule applies

to search warrants only and not to the supporting affidavits, whether or not the affidavit is

incorporated by reference. 185 S.W.3d 338, 344 (Tenn. 2006) ("Tennessee courts have not regarded

incorporated affidavits as part of search warrants for purposes of Rule 41(c)."). There, the court

stated, "While an affidavit must be retained in order to ensure subsequent judicial review of the

probable cause determination, there is no statute or rule in Tennessee which requires an affidavit

upon which a search warrant is issued to be attached or otherwise kept with the warrant." *Id.*

(quotation omitted); s*ee also State v. Henning*, 975 S.W.2d 290, 296 (Tenn. 1998) ("Rule 41(c) . .

. contains mandatory recording and filing requirements for warrants, but not for affidavits. The

affidavit is not considered part of the search warrant in this State even if it appears on the same

printed form as the warrant.").

In the instant case, the officers left both a copy of the warrant along with a record of the

goods that they seized at the Defendant's residence.  Tennessee law did not require them to also leave a copy of the affidavit.  Indeed, Detective Coultry testified that it was not standard procedure to leave a copy of the affidavit with the warrant.  (Suppression Hr'g Tr. 21:19-21:20, J.A. at 91.) We therefore find that the officers committed no violation of Rule 41 of the Tennessee Rules of Criminal Procedure.

*D.  The Affidavit Established Probable Cause*

As a final argument, the Defendant claims that the search warrant was not supported by probable cause because the affidavit used to obtain the warrant contained false or misleading information.  Specifically, the Defendant contends that the statements in the affidavit describing two vehicles that a witness viewed at the scene of a burglary on September 15, 2003 were false.  The affidavit states that the witness observed "a white and blue two tone older model full size pickup and a white four door Grand Prix or Grand Am back up to the residence on the date of the burglary." (Coultry Aff., J.A. at 44.)  It then states that Lawson was driving a Grand Am matching the description of the car used in the burglary when he was arrested on September 18, 2003. Additionally, when the officers went to his residence, they observed a white and blue GMC pickup truck parked behind Lawson's trailer.

According to the Defendant, the officers' witness, Sue Fortner, gave no description of the color of the GMC that she saw and gave no make or model for the car.  Indeed, the incident report for the burglary identified the car as a "newer, white mid-size car," but does not specify the make or model.  The Defendant claims that Detective Coultry filled in these missing facts only after seeing Lawson's vehicles.  Additionally, the Defendant argues that the affidavit describes the carpet roll

as being in a different location of the trailer than the location described in the officers' evidence log.

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause." Therefore, an affidavit submitted with an application for a warrant "must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978).

In *Franks*, 438 U.S. at 155-56, the United States Supreme Court set forth the two-part test that we must use in evaluating claims of misleading statements contained in an affidavit. We summarized this test in *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998), stating that:

> a court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant.

In the instant case, the district court did not address the first prong of the test, as it determined that even when purged of the allegedly false information, the affidavit includes sufficient evidence to establish probable cause. During the hearing on the Defendant's motion to suppress, the district court heard testimony and admitted evidence relating to the allegedly false information. At the hearing Detective Coultry testified that his statements in the affidavit were not based solely on the police report for the September 15 burglary. Rather, he contends that Fortner identified the make and model of the car during a subsequent conversation.

The Defendant subpoenaed Fortner, but she did not appear at the hearing. According to the

Defendant, Fortner would have testified that she never provided the specific description of the vehicles that appeared in the affidavit. The Defendant asked that the court reopen the hearing to take Fortner's testimony at a later date. The district court agreed that it would reopen the hearing if it deemed Fortner's testimony necessary. While Fortner never gave testimony, the Defendant did file Fortner's affidavit. In her affidavit, Fortner states that she did not provide the color of the truck that she saw, but rather described it as being a two-tone pickup, with a dark colored top and bottom separated by a light colored stripe. She also states that she did not know the make or model of the car. (Fortner Aff. at 1, Dec. 21, 2004, J.A. at 74.)

The Defendant argues that the district court erred in concluding, based on the second prong of the *Franks* test, that the affidavit provided sufficient evidence to support the state court judge's finding of probable cause. Specifically, the Defendant argues that the district court did not redact all of the allegedly false information prior to evaluating the warrant under *Franks*.

When reviewing a lower court's probable cause determination, we apply a "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Although we must avoid simply "rubber stamping" the conclusions of the lower court, we should equally avoid engaging in a hyper-technical, line-by-line critique of an affidavit. *See id.* at 236.

In its order denying the Defendant's motion to suppress, the district court described the redacted affidavit as containing the following relevant information:

> officers confirmed stolen a Harley Davidson trailer in Lawson's possession the night before the affidavit was drafted; officers found at Lawson's residence a truck matching the description of a truck seen at a burglary three days earlier; and most importantly, officers saw personal property inside Lawson's residence matching the description of items stolen only hours earlier.

*United States v. Lawson*, No. 1:04-cr-137 at 8 (E.D. Tenn. Dec. 1, 2004).

With regard to the first statement relating to the Harley Davidson, the Defendant argues that the trailer was found on Peggy Lawson's property, not on the Defendant's property. Detective Coultry never suggested that the Harley Davidson trailer was on the Defendant's property. Instead, the affidavit clearly describes the trailer as being at Peggy Lawson's residence and states the Peggy Lawson informed the police that the Defendant had stolen the trailer and stored it on her property. The defendant never alleged that any of these statements were false. As such, we find no error in the district court's inclusion of these statements in its consideration of the redacted affidavit.

Turning now to the district court's consideration of the vehicle descriptions, the Defendant appears to suggest that because certain specific details within the vehicle descriptions were allegedly false, the court should have redacted the entire description. The Defendant cites to no law in support of his position. Indeed, *Franks*, 438 U.S. at 155-56, requires only the redaction of the allegedly *false* information. In this case, that would mean that the Court would have to consider the description of the pickup truck without the detail about it being blue and white. Even without this detail, a sufficient description remains that matched this vehicle to the truck observed at Lawson's residence. Additionally, the description of the car, even without the make and the model, matches the car that the Defendant was driving on the night that he was arrested. Moreover, the fact that not just one, but both of the vehicles that Fortner observed at the September 15 burglary closely matched two vehicles in Lawson's possession creates an even stronger inference that Lawson was involved in the burglary.

Finally, the Defendant argues that the description in the affidavit of the roll of carpet is

inconsistent with the search inventory which states that the carpet and Shop Vac were found in a "room off of back entry room." As a result he now argues that Detective Coultry's statement that the officers viewed these items through the glass doors of the Defendant's trailer was false. First, we note that the defendant did not raise this argument below. As a result, the district court had no duty to redact this information as an allegedly false statement. Moreover, we find that the mere fact that the descriptions of the location of the carpet role are not identical does not indicate that Detective Coultry lied about where the officer's spotted the carpet. In his affidavit, Detective Coultry states that the officers "saw a roll of carpet laying in the back room of the residence through the glass doors." (Coultry Aff., J.A. at 44.) The Defendant claims this differs from the statement in the search inventory that the officers found the carpet in a "room off of back entry room." We fail to see how these descriptions differ in any meaningful aspect. The statement "room off of back entry room" could likely refer to a "back room." Just because the affidavit and the search inventory do not utilize identical wording does not mean they do not describe the same location.

Accordingly, this Court finds the Defendant's arguments without merit. The district court did not err in concluding that the redacted affidavit established probable cause to search the Defendant's trailer. As such, *Franks*, 438 U.S. at 155-56, does not require suppression of the evidence seized in that search.

## IV. Conclusion

For the foregoing reasons, this Court **AFFIRMS** the decision of the district court denying the Defendants' motion to suppress the marijuana and firearm seized from his trailer.