IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 26, 2017 Session

## STATE OF TENNESSEE v. ANTHONY JEROME MILLER

Appeal from the Criminal Court for Greene County
No. 15CR342    Alex E. Pearson, Judge

_____

No. E2016-01779-CCA-R3-CD

_____

Anthony Jerome Miller, the Defendant, pled guilty to sexual exploitation of a minor and reserved a certified question for appeal regarding the trial court's denial of his motion to suppress evidence. He asserts that the trial court erred in denying his motion to suppress the evidence obtained by the State during a search of his residence because the District Attorney General's Office did not apply for the search warrant, as required by Tennessee Code Annotated section 39-17-1007. The State responds that: (1) a search warrant is not "process" as intended by the meaning of section 39-17-1007; (2) the search warrant is valid under section 39-17-1007 because Investigator O'Keefe's application falls under the "except as otherwise provided" clause because law enforcement are authorized to apply for search warrants under Tennessee Rule of Criminal Procedure 41(a); and (3) if a search warrant is considered process under section 39-17-1007, then Investigator O'Keefe fulfilled the requirements of the statute by seeking verbal consent from an Assistant District Attorney. After a thorough review of the record and applicable law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

LeRoy Tipton, Jr., Greeneville, Tennessee, for the appellant, Anthony Jerome Miller.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Dan E. Armstrong, District Attorney General; and Ritchie Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.       Factual and Procedural Background

On July 20, 2015, the Greene County Grand Jury returned a presentment that charged the Defendant with sexual exploitation of a minor by possessing more than fifty images, a Class C felony. The Defendant subsequently filed a motion to suppress evidence obtained by the State in the search of his residence and his verbal statements to police, arguing that the search warrant was not issued upon the application of the District Attorney General as required by Tennessee Code Annotated section 39-17-1007.

At a hearing on the Defendant's motion to suppress, Jason Mark Lowe testified that he had worked at the Buchanan County Sheriff's Office in Buchanan County, Virginia, for approximately nine years. Beginning in January 2011, Investigator Lowe worked as an Internet Crimes Against Children ("ICAC") investigator. On December 23, 2014, Investigator Lowe discovered an IP address that had possibly possessed or distributed child sexual exploitation images through the ARES peer-to-peer ("PTP") file-sharing network.[1] Investigator Lowe explained that when he accesses a PTP network, he sees IP addresses of other computers sharing that network. Investigator Lowe then uses "web crawlers" to find any files that contain "certain key words that kind of trigger on files of interest[,]" or files that may contain child sexual exploitation material.[2] Investigator Lowe stated that the IP address at issue "showed approximately sixty-seven files of interest." Investigator Lowe downloaded "two full video files and eight or nine partial files" from the IP address at issue, which the parties stipulated contained child sexual exploitation material. On December 25, 2014, Investigator Lowe investigated the same IP address and again downloaded files from the IP address that contained child sexual exploitation material.

Investigator Lowe then applied for a subpoena to request that the internet provider linked to the IP address disclose the subscriber's information. Investigator Lowe stated that he originally believed that the IP address's subscriber was located in Smyth County, Virginia. However, the results of the subpoena revealed that the subscriber was located

---

[1] In his report to the Buchanan County Sheriff's Office, Investigator Lowe stated that "[t]he ARES network, like other [PTP] file[-]sharing networks, uses file hashing to uniquely identify files on the network and users typically locate files with keyword searches."

[2] Investigator Lowe explained that each file has an "SHA value," which functions like the file's DNA. Investigator Lowe compared the SHA values of files of interest to the SHA values of files in a database compiled by law enforcement of known child sexual exploitation material.

in Greeneville, Tennessee.[3]  Investigator Lowe contacted Michael O'Keefe, who was an ICAC investigator with the Morristown Police Department, and Investigator Lowe sent Investigator O'Keefe the evidence he had obtained.

On cross-examination, Investigator Lowe explained that he originally thought that the IP address's subscriber was located in Virginia because when he researched the IP address in a Child Protective Services database, the address "showed up in Sm[y]th County[, Virginia] as geolocation details."  He stated that he also investigated the IP address on December 29, 2014, and downloaded complete files.  Investigator Lowe agreed that IP addresses are "subject to change[]" and that IP addresses can be static or dynamic.  He stated that the IP address at issue was dynamic.[4]  On redirect examination, Investigator Lowe explained he used the ARES program to download the files of interest from the IP address.  He agreed that any other users on the PTP network could have downloaded the same files of interest from the IP address at issue.

Investigator Michael O'Keefe testified that he currently worked as a Special Agent with the Tennessee Bureau of Investigation, but he formerly worked as the ICAC investigator for the Morristown Police Department for eight years as a member of the ICAC Task Force, which operated in different counties to investigate "cybercrime involving child pornography."  In January 2015, Investigator O'Keefe received information from Investigator Lowe regarding a child sexual exploitation investigation.  Investigator O'Keefe verified that the physical location of the subscriber of the IP address at issue was located in Greeneville by requesting that the Greeneville Police Department take photographs of the house at the address supplied by the provider.  The Greeneville Police Department also researched background information on the resident and determined that the Defendant lived at the residence.  Investigator Lowe stated that, before he applied for a search warrant, he spoke with Cecil Mills, an Assistant District Attorney in the District Attorney's Office for the Third Judicial District, on January 12, 2015.  After obtaining Assistant District Attorney Mills's approval, Investigator O'Keefe applied for a warrant to search the Defendant's house on January 28, 2015.  He executed the search warrant on January 29, 2015.

The Defendant was not present when Investigator O'Keefe began searching the Defendant's residence, but the Defendant later arrived.  Investigator O'Keefe stated that

---

[3] Investigator Lowe explained that different internet providers use IP addresses in different ways, which can result in an IP address that appears to be located in one county, but the actual subscriber is located in a different county.

[4] Investigator Lowe explained that many businesses use static IP addresses "because they have certain fire walls that they have to go through different ports."  If a company or individual uses a dynamic IP address, they can change their IP address.

he asked the Defendant to sit down and spoke with the Defendant about the offense, but he noted that the Defendant was not handcuffed or placed into custody at that time. Investigator O'Keefe informed the Defendant of his *Miranda* rights and asked the Defendant to sign a waiver of rights form. The Defendant declined to sign the waiver form, and Investigator Lowe explained to the Defendant that he was not under arrest and could leave at any time. Investigator O'Keefe believed that the Defendant understood his rights. The Defendant informed Investigator O'Keefe that no one else had access to his computer or router. The Defendant stated that he regularly looked at adult pornography, but he explained that if he ever came across child pornography, "he would click off of it." Investigator O'Keefe seized various items of electronic media, including a hard drive, which contained seventy-five images and four videos of child sexual exploitation material. Investigator O'Keefe also used a program to collect search terms from the Defendant's internet searches that were commonly associated with child sexual exploitation material.

On cross-examination, Investigator O'Keefe agreed that he based his application for a search warrant on the evidence obtained by Investigator Lowe. He explained that he typically kept evidence from ICAC investigations in his office until he brought the evidence to the District Attorney's Office when prosecutors were preparing an indictment or presentment. Investigator O'Keefe stated that he typically applied for a search warrant in his ICAC investigations, and he applied for the search warrant in this case. He also prepared the search warrant affidavit. He did not request Assistant District Attorney Mills' assistance with preparing either the search warrant or the search warrant affidavit. Investigator O'Keefe agreed that he informed the Defendant that, if the Defendant were honest and cooperated with the investigation, he would try to assist the Defendant in later criminal proceedings. On redirect examination, Investigator O'Keefe explained that, if Assistant District Attorney Mills had advised against applying for a search warrant, he would not have applied for a search warrant in this case.

Tim Ward testified that he was an administrative patrol captain with the Greeneville Police Department. Captain Ward stated that on January 29, 2015, he assisted Investigator O'Keefe in locating the Defendant. Captain Ward observed the Defendant leaving his residence and heading to his place of employment before 9 a.m. After Investigator O'Keefe executed the search warrant, Captain Ward approached the Defendant at his workplace, explained that his residence was being searched, and informed him that he could stay at his work or return to his residence. Captain Ward stated that the Defendant was not placed in handcuffs and that the Defendant drove to his residence in his own vehicle. On cross-examination, Captain Ward testified that he followed the Defendant to ensure that the Defendant was headed to his residence and to determine whether the investigators needed Captain Ward's assistance.

The trial court found "that there [wa]s nothing wrong with Investigator Lowe being out there looking on the public internet to try to find downloadable files[.]" The trial court also found that "the issuance of a search warrant is not process as is contemplated under [Tennessee Code Annotated section] 39-17-1007." The trial court concluded that process, as intended by the statute, referred to "an arrest warrant like a presentment or an indictment" and that "a search warrant is an investigatory tool." The trial court also concluded that "even if a search warrant is process, the investigators complied with [Tennessee Code Annotated section 39-17-1007] by speaking with the District Attorney's Office and . . . specifically putting in the affidavit that they had consulted with General Cecil Mills . . . ." The trial court concluded that this information was "sufficient to put the [trial c]ourt on notice that, in fact, the District Attorney's Office . . . approv[ed] th[e] application." The trial court found that the search warrant "was served within a proper time from when it was applied for" and concluded that "the results of the search warrant will be admissible in this court in a subsequent trial."

Regarding the Defendant's assertion that his verbal statements to law enforcement should be suppressed, the trial court found that the Defendant "was sufficiently advised of his *Miranda* rights." The trial court concluded that "as a result [of] engaging in conversation after being informed of what those *Miranda* rights were . . . , that [the Defendant] waived his *Miranda* rights and as a result of that the oral statements that he made would be admissible in court." The trial court also concluded that the Defendant was not in a custodial interrogation when he entered his residence and Investigator O'Keefe asked the Defendant to sit down and asked him questions. The trial court denied the Defendant's motion to suppress.

On August 19, 2016, the Defendant entered a guilty plea to sexual exploitation of a minor but reserved a certified question for appeal. The trial court sentenced the Defendant to six years as a Range I, standard offender, and ordered the Defendant to serve 180 days. The "special conditions" box on the Defendant's judgment noted that the certified question and findings were "incorporated by reference." On the same day, the trial court entered an agreed order stating that the Defendant reserved the right to appeal the following certified question of law that was dispositive of his case with the consent of the State and the trial court: "Whether the affidavit in support of search warrant and search warrant were subject to and complied with the requirements of T.C.A. § 39-17-1007?" The agreed order noted that the certified question "identifie[d] clearly the scope and limits of the legal issue reserved[]" and that the Defendant, the State, and the trial court believed that the certified question was dispositive of the Defendant's case because "the State would have insufficient evidence to convict the [D]efendant if the search warrant was held invalid and the evidence was suppressed." The Defendant timely filed a notice of appeal.

## II. Analysis

On appeal, the Defendant asserts that he properly reserved a certified question of law and that the trial court erred in denying his motion to suppress. The State agrees that the Defendant has properly reserved the certified question but asserts that the Defendant is not entitled to relief.

### *Certified Question*

Tennessee Rule of Criminal Procedure 37 states that a "defendant may appeal from any judgment of conviction:

. . .

(2) on a plea of guilty or nolo contendere, if:

(A) the defendant entered into a plea agreement under Rule 11(c) but explicitly reserved[—]with the consent of the state and of the court[—]the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

The Tennessee Supreme Court has held that "the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3

appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved." *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988).

> [W]here questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

*Id.* "Certified question[s] are overly broad when they mention a violation of a defendant's right but do not clearly outline the question beyond the right allegedly violated." *State v. William G. Barnett, Jr.*, No. M2013-01176-CCA-R3-CD, 2014 WL 1632080, at *5 (Tenn. Crim. App. Apr. 23, 2014).

Additionally, "the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case." *Preston*, 759 S.W.2d at 650. The defendant has the burden of ensuring that the "prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified." *Id.* If the judgment does not set out the certified question, the judgment may incorporate by reference or refer to another document that does satisfy *Preston*'s requirements by setting out the certified question. *See State v Irwin*, 962 S.W.2d 477, 479 (Tenn. 1998).

If the certified question is not dispositive of the case, the appeal must be dismissed. *Preston*, 759 S.W.2d at 651. A certified question is dispositive "when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]." *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001)) (alterations in original). "A certified question may be rendered nondispositive by the failure to raise an underlying issue when the determination of that underlying issue is necessarily the basis of the disputed question." *State v. Prince Dumas*, No. W2015-01026-CCA-R3-CD, 2016 WL 4083256, at *3 (Tenn. Crim. App. Aug. 1, 2016). However, this court "is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case." *Dailey*, 235 S.W.3d at 134 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). We must "make an independent

- 7 -

determination that the certified question is dispositive." *Id.* (citing *Preston*, 759 S.W.2d at 651).

We conclude that the Defendant has complied with the requirements of *Preston* and Tennessee Rule of Criminal Procedure 37. The judgment incorporated by reference the agreed order entered by the trial court. The agreed order set out the certified question and stated that the Defendant reserved the certified question with the express consent of both the trial court and the State. The agreed order also stated that the Defendant, the trial court, and the State believed that the certified question was dispositive of the Defendant's case. We also find that the certified question sufficiently limited the scope of the legal issue and that the certified question was dispositive of the Defendant's case. Thus, the Defendant has complied with the requirements of Tennessee Rule of Criminal Procedure 37. We will now address the merits of the Defendant's certified question.

*Suppression of Evidence*

The applicable standard of review for suppression issues is well-established. A trial court's findings of fact are binding on this court unless the evidence in the record preponderates against them. *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing and all reasonable and legitimate inferences that may be drawn therefrom. *Id.* The trial court's application of law to the facts is reviewed under a de novo standard with no presumption of correctness. *Id.* (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). When reviewing a trial court's ruling on a motion to suppress, this court may consider the entire record, including the proof presented at the suppression hearing as well as at trial. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005); *Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998).

Under the U.S. Constitution and the Tennessee Constitution, a search warrant must be issued upon a finding of probable cause. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. Our supreme court has defined probable cause as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *Henning*, 975 S.W.2d at 294 (citing *Lea v. State*, 181 S.W.2d 351, 352 (Tenn. 1944)). Additionally, "[a] warrant shall issue only on an affidavit or affidavits that are sworn before the magistrate and establish the grounds for issuing the warrant." Tenn. R. Crim. P. 41(c)(1). "The district attorney general, assistant district attorney general, criminal investigator, or any other law-enforcement officer may request a search warrant." Tenn. R. Crim. P. 41(a).

Tennessee Code Annotated section 39-17-1007, a part of the Tennessee Protection of Children Against Sexual Exploitation Act of 1990, states that "[n]o process, except as otherwise provided, shall be issued for the violation of §§ 39-17-1003 -- 39-17-1005 unless it is issued upon the application of the district attorney general of the district." Tenn. Code Ann. § 39-17-1007. The Defendant asserts that, because Investigator O'Keefe applied for the search warrant at issue, all evidence gathered by Investigator O'Keefe pursuant to the execution of the search warrant must be suppressed because the search warrant was not issued upon the application of the District Attorney General. He maintains that seeking the verbal permission of Assistant District Attorney Mills does not fulfill the requirement of section 39-17-1007 that process be "issued upon the application of the district attorney general of the district." However, the State argues that the trial court correctly concluded that a search warrant is not "process" as intended by section 39-17-1007.

### *Search Warrant as Process*

Tennessee Code Annotated section 39-11-104 states that Title 39, which sets out criminal offenses, "shall be construed according to the fair import of its terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104. The words of a statute should be given their ordinary and natural meaning, with reference to dictionary definitions if appropriate. *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting *State v. Williams*, 690 S.W.2d 517, 529 (Tenn. 1985)). "When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources." *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). When interpreting a statute, we must give the statute "the full effect of the General Assembly's intent without unduly restricting or expanding the statute's intended scope[,]" and "[w]e presume that every word in the statute has meaning and purpose . . . ." *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010) (citing *Larsen-Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010)).

> In interpreting statutes, we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose. The construction must not be strained and must not render portions of the statute inoperative or void. We must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.

*State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995) (internal citations omitted). We review issues of statutory interpretation *de novo*, and the trial court's conclusions are not

afforded a presumption of correctness. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015). In the case sub judice, the trial court concluded that "the issuance of a search warrant is not process as is contemplated under [Tennessee Code Annotated section] 39-17-1007." The trial court also concluded that process, as intended by the statute, referred to "an arrest warrant like a presentment or an indictment" and that "a search warrant is an investigatory tool."

Black's Law Dictionary defines "process" as the following: (1) "[t]he proceedings in any action or prosecution[,]" such as *due process of law*, and (2) "[a] summons or writ, esp[ecially] to appear or respond in court[,]" such as *service of process*. BLACK'S LAW DICTIONARY 14c (10th ed. 2014) (emphasis added). The State argues that the second definition, "[a] summons or writ, esp[ecially] to appear or respond in court[,]" applies to "process" in section 39-17-1007 because section 39-17-1007 only applies to process issued "for *the violation* of" sections 39-17-1003 through -1005. Thus, the State argues that "process," as used in section 39-17-1007, does not include a search warrant because search warrants are issued for investigatory purposes and not for a violation of a statute. The State further alleges that "when read in conjunction with the surrounding parts of the Sexual Exploitation of Minors Act, the structure of the statute shows that 'process' indicates the forfeiture or injunction proceedings set out in Tenn[essee] Code Ann[otated] [sections] 39-17-1008 and 39-17-1006." The State contends that "the purpose of [section 39-17-1007] was to limit who could bring forfeiture or injunction actions under the Act, not to create an additional barrier to law enforcement obtaining evidence in cases involving child pornography."

Tennessee Code Annotated section 39-17-1006 states in part:

> If the district attorney general is of the opinion that [sections] 39-17-1001--39-17-1005 are being violated, the district attorney general may file a petition in a circuit, chancery or criminal court of that district relating the opinion, and request the court to issue a temporary restraining order or a temporary injunction enjoining the person named in the petition from removing the material in question from the jurisdiction of the court pending an adversary hearing on the petition.

Tenn. Code Ann. § 39-17-1006. Section 39-17-1008 states, in part, that "[a]ny conveyance or real or personal property used in the commission of an offense under this part is subject to forfeiture under title 40, chapter 33, part 2." Tenn. Code Ann. § 39-17-1008.

Because the Tennessee General Assembly included section 39-17-1007 near the end of the Sexual Exploitation of Minors Act between the injunction and forfeiture

- 10 -

provisions, we conclude that our legislature intended the issuance of "process" in section 39-17-1007 to refer to the Act's injunction and forfeiture provisions. Thus, "process," as used in section 39-17-1007, does not include a search warrant.

The Defendant argues that, based on *State v. Timothy Wade Davis*, No. E2003-02162-CCA-R3-CD, 2004 WL 2378251, at * 1 (Tenn. Crim. App. Oct. 25, 2004), *aff'd on other grounds by State v. Davis*, 185 S.W.3d 338, 347 (Tenn. 2006), the trial court erred in concluding that "the issuance of a search warrant is not process as is contemplated under [Tennessee Code Annotated section] 39-17-1007." In *Timothy Wade Davis*, a detective with the Knox County Sheriff's Department drafted a search warrant with the assistance of a legal advisor for the department. *Id.* at *3. On appeal, the Defendant argued that any evidence gather pursuant to the search warrant should have been suppressed because law enforcement applied for the search warrant. *Id.* at *7. In its discussion of the issue, the court commented that "Tennessee Code Annotated section 39-17-1007 is broad enough to include a search warrant[.]" *Id.* However, we believe that the Defendant's reliance on *Timothy Wade Davis* is inapposite because the court ultimately relied on other facts to resolve the issues before it on appeal. Specifically, the court concluded that although "the District Attorney General's office had no involvement in seeking or obtaining issuance of the search warrant" for allegations of child rape, aggravated sexual battery, and sexual exploitation of minors, the search warrant was valid because it was "independently justified by the alleged violations of rape of a child and aggravated sexual battery." *Id.*

Based on our review of the language of the relevant statutes, we conclude that "process" as used in section 39-17-1007 was not intended to include search warrants. The Defendant is not entitled to relief on this ground.

### *"[E]xcept as otherwise provided . . ." Language*

Alternatively, the State argues that even if "process" includes search warrants, a law enforcement officer's application for a search warrant would not violate section 39-17-1007 because the statute includes the following language: "[n]o process, *except as otherwise provided*, shall be issued . . . ." *See* Tenn. Code Ann. § 39-17-1007 (emphasis added). The State asserts that because law enforcement officers are authorized to apply for search warrants in other areas of Tennessee statutes, case law, or procedural rules, Investigator O'Keefe's application for the search warrant at issue did not violate section 39-17-1007.

Tennessee Rule of Criminal Procedure 41(a) states, in pertinent part, that "[t]he district attorney general, assistant district attorney general, *criminal investigator, or any other law-enforcement officer may request a search warrant*." Tenn. R. Crim. P. 41(a)

(emphasis added). We agree with the State that, if "process" includes search warrants, the "except as otherwise provided" language of section 39-17-1007 would allow law enforcement to apply for a search warrant to gather evidence regarding a violation of sections 39-17-1003 through 39-17-1005 because law enforcement officers are authorized to request a search warrant under Tennessee Rule of Criminal Procedure 41(a). The Defendant is not entitled to relief on this ground.

### *Role of the District Attorney General*

Lastly, the State argues that, even if process includes search warrants, Investigator O'Keefe complied with the requirements of section 39-17-1007 by obtaining the verbal permission of Assistant District Attorney Mills before applying for the search warrant. However, because we have concluded that "process" as used in section 39-17-1007 does not include search warrants, we decline to address this issue in this opinion.

### III. Conclusion

We conclude that the Defendant properly certified his question of law to this court. We hold that Investigator O'Keefe's application for the search warrant did not violate Tennessee Code Annotated section 39-17-1007 because "process" does not include search warrants. Additionally, Investigator O'Keefe's application for the search warrant would fall under the "except as otherwise provided" language of section 39-17-1007. For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE