IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 6, 2017 Session Heard at Knoxville[1]

**STATE OF TENNESSEE v. ANGELA FAYE DANIEL**

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Williamson County
No. II-CR018524          Deanna B. Johnson, Judge**

**No. M2015-01073-SC-R11-CD**

We granted permission to appeal in this case in order to determine whether the exclusionary rule should be applied to a blood sample drawn from an individual pursuant to a search warrant because the arresting officer failed to leave a copy of the warrant with the individual. The Defendant, Angela Faye Daniel, was arrested for driving under the influence. The arresting officer obtained a search warrant and transported the Defendant to a medical facility for a blood draw. The officer failed to give the Defendant a copy of the search warrant. The trial court granted the Defendant's motion to suppress the evidence obtained pursuant to the warrant on the basis of the exclusionary rule set forth in Tennessee Rule of Criminal Procedure 41. The State sought and was granted an interlocutory appeal, and the Court of Criminal Appeals affirmed. We hold that, under the facts and circumstances of this case, a good-faith exception should be applied to Rule 41's exclusionary rule. Accordingly, we reverse the judgment below and remand this matter to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Criminal Appeals Reversed;
Remanded to the Trial Court**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Leslie E. Price, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin C. Hess, Assistant District Attorney General, for the appellant, the State of Tennessee.

---

[1] We heard oral argument in this case at the University of Tennessee College of Law in Knoxville, Tennessee.

David H. Veile, Franklin, Tennessee, for the appellee, Angela Faye Daniel.

Jonathan Harwell, Knoxville, Tennessee, and Richard L. Tennent, Nashville, Tennessee, for amicus curiae, Tennessee Association of Criminal Defense Lawyers.

## OPINION

### Factual and Procedural Background

On June 6, 2014, Officer Megan Valentin of the Franklin Police Department stopped the Defendant for suspected driving under the influence. The Defendant admitted to consuming alcohol but refused to participate in any field sobriety tests. Officer Valentin arrested the Defendant and then obtained a search warrant for a blood draw. Officer Valentin transported the Defendant to Williamson County Medical Center, and Sherry Buie[2] withdrew a blood sample from the Defendant. The Defendant subsequently was indicted for driving under the influence of an intoxicant in violation of Tennessee Code Annotated section 55-10-401 (Supp. 2014).

The Defendant filed a motion to suppress the evidence obtained pursuant to the search warrant on the basis that she was not given a copy of the warrant.[3] At the ensuing evidentiary hearing, Officer Valentin testified that it was her normal practice to provide a copy of search warrants to the persons affected. However, she did not remember specifically giving a copy of the search warrant at issue in this case to the Defendant. She stated that she did not have a reason to withhold the copy from the Defendant, that she did not purposefully withhold the copy from the Defendant, and that, if she had withheld it, it was due to a mistake on her part.

The Defendant testified that she recalled being arrested on June 6, 2014, and that she recalled being taken to the hospital and having blood taken from her. The Defendant stated that she was given the pink copy of the Implied Consent Form. When asked if she had received "a copy of a search warrant or anything that said search warrant on it?" the Defendant replied, "I did not." When asked on cross-examination whether there was a possibility that she did not remember correctly, the Defendant stated, "I didn't get the copy." When asked the same question a second time, the Defendant answered, "There is

---

[2] Ms. Buie is identified on the Affidavit of Person Who Withdrew Blood as employed by Williamson Medical as a "MLT ASEP."

[3] The Defendant's motion to suppress also alleged that the search warrant was not supported by probable cause. The trial court's order granting the Defendant's motion did not address this independent basis for suppression, and that issue is not before us.

2

not a possibility, I didn't get the paperwork." She based her certainty on her clear memory of the events at issue.[4]

On the basis of this testimony, the trial court found as follows:

> The testimony from [the Defendant] is that she was not given a copy of the search warrant. She was very adamant about that. The testimony from Officer Valentin is that she simply did not recall, but in most situations she does. And let me say, you know, I applaud Ms.—Officer Valentin, that she was—she was honest both in General Sessions and in this Court and this proceeding when she just said I cannot prove in this particular case that I—I gave her a copy, and I just don't remember. And I appreciate [Officer Valentin's] honesty. . . . [I]n this case, the defense has proven by a preponderance of the evidence that [the Defendant] was not given a copy of the search warrant. [Rule 41] is pretty clear . . . [that] if a copy is not given to the accused then any evidence has to be suppressed.

Based on these findings and conclusions, the trial court ruled that, pursuant to Tennessee Rule of Criminal Procedure 41(g)(6), Officer Valentin's apparent failure to give the Defendant a copy of the warrant at the time of its execution required suppression of the evidence obtained pursuant to the warrant. The trial court further concluded that Officer Valentin's failure to provide the Defendant with a copy of the search warrant was not a "clerical error" as defined by the Exclusionary Rule Reform Act, Tenn. Code Ann. § 40-6-108 (2012) ("the ERRA"). Accordingly, the ERRA did not apply so as to exempt the evidence from suppression under Rule 41. Therefore, the trial court granted the Defendant's motion to suppress.

Subsequently, the State sought and obtained an interlocutory appeal. The Court of Criminal Appeals affirmed the trial court's judgment. State v. Daniel, No. M2015-01073-CCA-R9-CD, 2016 WL 1213007, at *5 (Tenn. Crim. App. Mar. 29, 2016), perm. app. granted (Tenn. Jan. 18, 2017). We granted the State's application for permission to appeal in order to determine whether Rule 41 requires suppression of the evidence at issue under the facts and circumstances presented and, if so, whether the ERRA applies to countermand Rule 41's exclusionary rule.

## Standard of Review

The facts in this matter are not in dispute. Rather, we are reviewing the lower courts' construction of (1) Tennessee Rule of Criminal Procedure 41 and (2) the ERRA. We review these questions of law de novo, with no presumption of correctness accorded

---

[4] The record on appeal contains a copy of the search warrant. However, the record does not indicate at what point the Defendant first saw the warrant.

to the rulings below. See State v. Henderson, 531 S.W.3d 687, 692 (Tenn. 2017) (citing State v. Springer, 406 S.W.3d 526, 532-33 (Tenn. 2013)).

## Analysis

We begin with the relevant text of Tennessee Rule of Criminal Procedure 41. At the time the Defendant was arrested, that Rule provided that a magistrate issuing a search warrant "shall prepare an original and two exact copies" of the warrant. Tenn. R. Crim. P. 41(d) (2014). The Rule further required the magistrate to keep one copy as a part of his or her official records while another copy "shall be left with the person or persons on whom the search warrant is served." Id. The Rule also provided that "[t]he officer executing the warrant shall: (A) give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property; or (B) shall leave the copy and receipt at a place from which the property was taken." Tenn. R. Crim. P. 41(e)(4). Finally, as relevant to this case, the Rule provided as follows:

> A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) to suppress any evidence obtained in the unlawful search or seizure. If property was unlawfully seized, the aggrieved person may move for the return of the property. *The motion shall be granted*—except as to the return of contraband—if the evidence in support of the motion shows that:
>
> . . . .
>
> (6) the serving officer—where possible—did not leave a copy of the warrant with the person or persons on whom the search warrant was served.

Tenn. R. Crim. P. 41(g) (emphasis added).[5]

In large part, our Rule 41 closely resembles its federal counterpart. See Fed. R. Crim. P. 41. Particularly relevant to this case, the federal rule provides, similarly to ours, that "[t]he officer executing the [search] warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the

---

[5] By Order filed on January 8, 2018, this Court amended Tennessee Rule of Criminal Procedure 41 by changing the language in subsection (g) that currently reads "The motion *shall* be granted . . . ." to read "The motion *may* be granted . . . ." (Emphases added). 2018 Tenn. Ct. Order 0002, No. ADM2017-01892 (Tenn. 2018). This change became effective on July 1, 2018, and trial courts may now exercise discretion in determining whether acts or omissions that do not constitute constitutional violations, but that do violate only Rule 41, justify granting a motion to suppress. The implementation of this revised rule, at least for the most part, should obviate the need for this Court to determine on a case by case basis whether a good faith exception should be recognized for a technical violation of Rule 41.

4

property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C). Unlike our Rule 41, however, the federal rule does not contain a provision mandating suppression of evidence upon a proper motion where the proof demonstrates that the officer executing the warrant did not comply with this provision. See Fed. R. Crim. P. 41.

Indeed, the United States Court of Appeals for the Sixth Circuit has recognized that "although the procedural steps enumerated in [Federal Rule of Criminal Procedure 41(f)(1)(C)] are important and should not be disregarded, they are ministerial and '[a]bsent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.'" Frisby v. United States, 79 F.3d 29, 32 (6th Cir. 1996) (quoting United States v. McKenzie, 446 F.2d 949, 954 (6th Cir. 1971)). The Sixth Circuit also has recognized that its rule requiring the delivery of a warrant to the person searched is "a statutory rule that is not required by the Fourth Amendment." United States v. Crumpton, 824 F.3d 593, 617 (6th Cir. 2016) (citing Frisby, 79 F.3d at 32). Accordingly, the federal appellate court held in Crumpton that, even if the officer had failed to leave a copy of a search warrant at the premises searched in contravention of Federal Rule of Criminal Procedure 41(f)(1)(C), the defendant was not entitled to suppression. Id. The court reasoned that, where the defendant had been shown a copy of the warrant at the scene of the search, it was "difficult to imagine what prejudice he could have suffered if the agents did not leave a copy of the warrant at the house as well." Id.[6]

We also have reviewed other states' rules of criminal procedure regarding the execution of search warrants. Although many states, like Tennessee and the federal government, require that an officer executing a warrant leave a copy of the warrant with the person whose premises are searched (or leave a copy of the warrant in the premises if the person is not available),[7] we have found no other state that has a rule mandating the

---

[6] Crumpton involved the seizure of ammunition and illegal drugs. 824 F.3d at 601.

[7] See, e.g., Ala. R. Crim. P. 3.11(a); Alaska R. Crim. P. 37(b)(1-2); Ark. R. Crim. P. 13.3(c); Del. Code Ann. tit. 11, § 2307(b); D.C. Super. Ct. R. Crim. P. 41(f)(6); Haw. R. Penal P. 41(d); Idaho Crim. R. 41(e)(2); 725 Ill. Comp. Stat. Ann. 5/108-6; Kan. Stat. Ann. § 22-2506(a); Me. R. Unified Crim. P. Rule 41(g); Md. Code Ann., Crim. Proc. § 1-203(a)(5); Md. Rule 4-601(e)(2); Mich. Comp. Laws Ann. § 780.655(1); Minn. Stat. Ann. § 626.16; Miss. R. Crim. P. 4.4(a); Mont. Code Ann. § 46-5-227; Neb. Rev. Stat. Ann. § 29-815(1); Nev. Rev. Stat. Ann. § 179.075(2); N.H. Rev. Stat. Ann. § 595-A:5; N.J. Ct. R. 3:5-5(a); N.M. R. Crim. P. 5-211(C); N.C. Gen. Stat. Ann. § 15A-252; N.D. R. Crim. P. 41(d)(3); Ohio R. Crim. P. 41(d)(1); Or. Rev. Stat. Ann. § 133.575(3); Pa. R. Crim. P. 208(A); S.C. Code Ann. § 17-13-150; S.D. Codified Laws § 23A-35-10; Tex. Code Crim. Proc. Ann. art. 18.06(b); Vt. R. Crim. P. 41(e)(1)(A); Wyo. R. Crim. P. 41(f)(1)(C).

suppression of evidence (on proper motion) when this requirement is not met.[8] Tennessee appears unique in this regard. As noted by one scholar, the prevailing view is that the requirement that an officer leave a copy of the search warrant with the person searched is ministerial and that an officer's accidental failure to comply with this ministerial requirement does not void an otherwise valid search, absent a showing of prejudice. LaFave, 2 Search & Seizure § 4.12(a) (5th ed.).

For instance, in Florida, a defendant tried to suppress evidence gathered pursuant to a search warrant on the basis that the officer gave him a copy of only the first page of the warrant. Harden v. State, 433 So.2d 1378, 1379 (Fla. Dist. Ct. App. 1983). The applicable statute required delivery of the entire warrant. Id. (citing Fla. Stat. 933.11 (1981)). The Florida appellate court determined that "[m]ost other courts which have considered the question have held that the failure to serve a copy of the search warrant at the time of execution does not invalidate the seizure in the absence of a showing of prejudice." Id. (citing McKenzie, 446 F.2d 949; State v. Stachler, 570 P.2d 1323 (Haw. 1977); State v. Martelle, 252 A.2d 316 (Me. 1969); State v. Mollberg, 246 N.W.2d 463 (Minn. 1976); Commonwealth v. Musi, 404 A.2d 378 (Pa. 1979); State v. Parker, 626 P.2d 508 (Wash. Ct. App. 1981)).

Noting Tennessee's outlying position in this regard, id. (citing Johnson v. State, 348 S.W.2d 295 (Tenn. 1961)),[9] the Florida court adopted the majority rule, recognizing that

> [t]he failure to serve a proper copy of the search warrant at the time of execution has no effect upon the constitutional imperatives for its issuance and does not diminish the reliability of the evidence seized. The appellant

---

[8] Indeed, at least one state specifically provides that the "[f]ailure to leave a copy [of the search warrant] and receipt may not render the property seized inadmissible at trial." Mont. Code Ann. § 46-5-227.

[9] The Florida court cited Johnson for the proposition that suppression was granted "because the defendant was not given an exact copy of [the] warrant where [the] statute specifically provided that failure to make proper execution renders [the] search illegal." Harden, 433 So.2d at 1379. A close review of Johnson indicates that this Court held the search invalid for two reasons. First, the copy of the warrant left with the defendant was significantly different than the original, explained on the basis that "the carbon paper was too short." 348 S.W.2d at 296. Because the statute in effect at the time required two exact copies of the original warrant and mandated that "'[f]ailure to comply with this section shall make any search conducted under said warrant an illegal search and seizure,'" this Court held that the warrant was fatally defective. Id. (quoting Tenn. Code Ann. § 40-518). Second, "the search warrant was a general warrant enabling the officers to search multiple premises, some of which were in possession of and occupied by strangers to the process, thus being in violation of Article I, Section 7 of the Constitution of Tennessee." Id. at 295, 296.

has made no showing of prejudice in the failure to serve him with a complete copy of the search warrant. There is no indication that he asked for the balance of the warrant or even realized that his copy was incomplete. We do not suggest that the requirement for serving a copy of a search warrant is unimportant, but where, as here, there was no prejudice in the failure to do so, justice would not be served in imposing an exclusionary rule upon the items seized.

Id.; see also, e.g., Baxter v. State, 556 S.W.2d 428, 433 (Ark. 1977) (defendant not entitled to suppression for officer's failure to leave copy of warrant where defendant was given opportunity to read warrant at site of search and no showing that failure to leave copy created substantial prejudice); Greene v. State, 358 S.W.3d 752, 758 (Tex. Ct. App. 2011) (recognizing that officer's failure to provide copy of search warrant as required by the code of criminal procedure "does not require suppression of evidence absent a showing of prejudice") (citations omitted).

We emphasize that our unique rule mandating suppression where an officer fails to leave a copy of a search warrant does not arise from the Tennessee Constitution's prohibition against unreasonable searches. See Tenn. Const. art. I, § 7 (providing that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted"). Indeed, this Court has acknowledged that Rule 41 imposes requirements that exceed constitutional requirements. See State v. Davis, 185 S.W.3d 338, 346 (Tenn. 2006) (citing State v. Stepherson, 15 S.W.3d 898, 902 (Tenn. Crim. App. 1999)). Nevertheless, this Court has strictly construed the provisions of Rule 41 for many years. See, e.g., State v. Coffee, 54 S.W.3d 231, 234 (Tenn. 2001) (suppressing evidence gathered pursuant to search warrant where issuing magistrate failed to keep an exact copy of the original as required by Rule 41); State v. Bobadilla, 181 S.W.3d 641, 645 (Tenn. 2005) (suppressing evidence gathered pursuant to search warrant where issuing magistrate failed to indicate hour at which the warrant was issued as required by Rule 41).

Perhaps frustrated with the suppression of evidence for technical violations of Rule 41, the legislature enacted the ERRA in 2011. The ERRA provides as follows:

(a) Notwithstanding any law to the contrary, any evidence that is seized as a result of executing a search warrant issued pursuant to . . . Tennessee Rules of Criminal Procedure Rule 41 that is otherwise admissible in a criminal proceeding and not in violation of the constitution of the United States or Tennessee shall not be suppressed as a result of any violation of . . . Tennessee Rules of Criminal Procedure Rule 41 if the court

7

determines that such violation was a result of a good faith mistake or technical violation made by a law enforcement officer, court official, or the issuing magistrate as defined in subsection (c).

. . . .

(c) As used in this section, unless the context otherwise requires, "good faith mistake or technical violation" means: (1) An unintentional clerical error or clerical omission made by a law enforcement officer, court official or issuing magistrate in the form, preparation, issuance, filing and handling of copies, or return and inventory of a search warrant[.]

Tenn. Code Ann. 40-6-108.  The State argues in this case that Officer Valentin's failure to give the Defendant a copy of the search warrant was a "clerical error" and, therefore, the evidence collected pursuant to the search warrant is exempted by the ERRA from suppression under Rule 41.

In State v. Lowe, No. M2014-00472-SC-R11-CD, __ S.W.3d __, __ (Tenn. 2018), this Court determined that the ERRA violates the Tennessee Constitution's Separation of Powers clause.  Accordingly, the ERRA is not available to assist the State in this matter.

However, this Court also has demonstrated a recent willingness to create narrow good-faith exceptions to Rule 41's exclusionary rule where the deviations from that Rule's stringent requirements are inadvertent, inconsequential, and clearly resulted in no prejudice to the defendant.  As we explained in State v. Reynolds,

the exclusionary rule is a judicially crafted remedy for constitutional violations.  As a result, this Court has both the authority and the responsibility to decide whether the Davis [v. United States, 564 U.S. 229 (2011),] good-faith exception, or any other exception, should be adopted. Hodge v. Craig, 382 S.W.3d 325, 337 (Tenn. 2012) ("[I]t is now beyond reasoned argument that this Court has the power to develop and adapt common law principles and their application.").  Any holding that Rule 41(g), a procedural rule promulgated by this Court, can divest this Court of such authority would be peculiar indeed, because "[o]nly the [Tennessee] Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this [S]tate." State v. Mallard, 40 S.W.3d 473, 480-81 (Tenn. 2001) (internal citations omitted).  Rule 41(g) does not explicitly purport to divest this Court of such authority, and reading Rule 41(g) [to do so] simply is not reasonable.

504 S.W.3d 283, 314 (Tenn. 2016).

Thus, in State v. Davidson, we considered an affidavit in support of a search warrant that had been inadvertently printed out on the wrong size paper, resulting in the affidavit's signature line being cut off. 509 S.W.3d 156, 184 (Tenn. 2016). The officer signed the warrant, instead, in contravention of Rule 41's requirement that he sign the affidavit.[10] Noting that the search warrant met all constitutional requirements, and that the affidavit's defect was the result of a good-faith error on the part of the officer, we held that the instrument's failure to comply with the relevant statutes and Rule 41 did not require exclusion of the evidence gathered pursuant to the warrant:

> When an officer has complied with constitutional requirements to obtain a warrant, but in good faith failed to comply with the state statutory and rule affidavit requirements, societal interests are not advanced when the exclusionary rule applies to exclude evidence obtained from execution of the warrant.

Id. at 186.

Similarly, in Lowe, supra, we considered a search warrant that had been issued in triplicate as required by Rule 41. The judge signed and dated each iteration of the warrant and indicated the time of its issuance on each copy. However, the judge correctly indicated "AM" on two of the copies and erroneously indicated "PM" on the third. Although there was no factual dispute about when the warrant was actually issued and executed, the defendant moved to suppress the evidence collected pursuant to the warrant because the discrepancy rendered the warrant noncompliant with Rule 41.

As we did in Davidson, we created in Lowe a narrow good-faith exception to the exclusionary rule otherwise mandated by Rule 41. See Lowe, __ S.W.3d at __. In Lowe, the judge who had issued the warrant testified at the suppression hearing that the AM/PM discrepancy was the result of a simple clerical error on his part. The trial court found that the Rule 41 violation "was the result of a good faith mistake or technical violation . . ., [and] that this error was an unintentional clerical error." It was undisputed that a copy of the warrant was left at the residence searched and that the search had commenced before the "PM" time indicated on the copy containing the error. There was no contention that the defendant had suffered any particular prejudice as a result of the error. We determined that this technical failure to meet Rule 41's requirement that three "exact" copies of each warrant be prepared resulted from an unintentional clerical error by the issuing magistrate and that the resulting variation between the three copies of the warrant was inconsequential. Id. at __. Echoing our concern in Davidson that societal interests are not advanced by the application of the exclusionary rule in such circumstances, we held that "a good-faith clerical error that results in an inconsequential variation between

---

[10] The officer's failure to sign the affidavit also was contrary to the requirements of Tennessee Code Annotated sections 40-6-103 and 40-6-104. See Davidson, 509 S.W.3d at 183.

the three copies of a search warrant required pursuant to Rule 41, in and of itself, does not entitle the moving party to suppression of the evidence collected pursuant to the warrant." Id. at __.

In this case, the error arose not during the preparation of the search warrant but rather after the warrant was issued. Accordingly, it will be helpful to examine the policy concerns underlying Rule 41's requirements regarding what an officer should do after a search warrant has been issued and the search commenced.

As we have explained,

> Warrants serve to provide law enforcement officials and persons subject to such warrants with written evidence that the search has been authorized by a judicial officer upon a showing of probable cause. Warrants also serve to define and to limit the duration and scope of authority of law enforcement officials by delineating the specific date and time of issuance of the warrant and by describing with particularity the premises to be searched and the items subject to seizure.

Davis, 185 S.W.3d at 345. Additionally, as recognized by our Court of Criminal Appeals, "[t]he purpose of providing notice to the owner of seized property is to notify the owner of the source of the seizure so that the owner can pursue available remedies for its return." State v. Rogers, No. E2011-02529-CCA-R3-CD, 2013 WL 5371987, at *18 (Tenn. Crim. App. Sept. 23, 2013) (citing City of West Covina v. Perkins, 525 U.S. 234, 240 (1999)), perm. app. denied, (Tenn. Apr. 11, 2014).

In this case, the only property authorized under the warrant to be seized was the Defendant's blood. Since the Defendant testified that she recalled clearly being arrested, being transported to the hospital, and having her blood drawn, it is obvious that the Defendant was conscious during the search. It is also obvious that the Defendant knew exactly what property was being seized, by whom, at what time, and for what purpose. Since the blood was taken for testing procedures, it was not available to be returned to the Defendant. Under these sharply circumscribed facts and circumstances, it is apparent that Officer Valentin's failure to leave a copy of the warrant with the Defendant did not cause any particular or specific harm or prejudice to the Defendant, and the Defendant does not contend that she suffered any such particular or specific prejudice.

Officer Valentin testified that it was her practice to provide a copy of search warrants to the persons subjected to them but that she could not specifically recall providing one to the Defendant. She also testified that she had no reason to withhold a copy of the warrant from the Defendant, had not purposefully withheld the copy, and, if she had failed to give a copy to the Defendant, it was a mistake. The trial court explicitly found Officer Valentin to be an "honest" witness, and we have discerned no indication in

10

the record that Officer Valentin's failure to leave a copy of the warrant with the Defendant was the result of anything other than a simple, inadvertent oversight.

Based upon the record before us, particularly the trial court's finding that Officer Valentin's testimony was truthful, we conclude that Officer Valentin's oversight occurred in good faith. We also conclude that Officer Valentin's oversight caused no prejudice whatsoever to the Defendant. The Defendant is not contending before this Court that Officer Valentin's failure to give her a copy of the warrant constituted any violation of her constitutional rights. Rather, Officer Valentin's mistake resulted in a violation of one of Rule 41's technical requirements.

We emphasize that the policy considerations underlying Rule 41's requirement that a copy of the search warrant be left with the relevant individual are not implicated in this case. We also emphasize that the record supports the inference that Officer Valentin's mistake was anomalous. Under these limited circumstances, "societal interests are not advanced when the exclusionary rule applies to exclude evidence obtained from execution of the warrant." Davidson, 509 S.W.3d at 186; see also Lowe, __ S.W.3d at __.

As we did in Lowe, __ S.W.3d at __, we take this opportunity to provide guidance to trial courts considering motions to suppress arising from technical violations of Rule 41. When a defendant has demonstrated that a search warrant or its supporting affidavit is noncompliant with the technical requirements of Rule 41 or other relevant statute(s), the burden shifts to the State to establish by a preponderance of the evidence that (1) the technical noncompliance was the result of a good-faith error and (2) the error did not result in any prejudice to the defendant. See, e.g., United States v. Diehl, 276 F.3d 32, 41-42 (1st Cir. 2002) (recognizing that, where the state is defending a motion to suppress on the basis of a good faith exception to the exclusionary rule, it is the state's burden to demonstrate that the conduct at issue meets the standards of good faith). Although the term "good faith" is not subject to precise definition, a good faith error is one that is characterized by simple, isolated oversight or inadvertence. A good faith mistake does not include conduct that is deliberate, reckless, or grossly negligent, nor does it include multiple careless errors. Furthermore, where a finding of good faith depends on the credibility of one or more witnesses, the trial court should set forth its assessment of that factor to facilitate appellate review. If the State carries its burden of proving both prongs, the trial court then may consider, in the trial court's sound discretion, whether the technical noncompliance was sufficiently inadvertent and inconsequential to qualify for the narrow good-faith exception to Rule 41's exclusionary rule that we have adopted.[11]

---

[11] Because the trial court in this case did not have the benefit of the good-faith exception analysis that we adopt herein, the trial court did not make an explicit finding about Officer Valentin's good faith nor any specific findings regarding prejudice to the Defendant.

In sum, given the specific facts of this case in which the Defendant was aware of the blood draw and the fact that no property of the Defendant was seized as a result of the warrant which could later be returned, we hold that a good-faith exception to Rule 41's technical requirement that the officer executing a search warrant leave a copy of the warrant with the person searched should apply in this case. Cf. Crumpton, 824 F.3d at 617 (holding that officer's failure to leave a copy of warrant at residence in contravention of Federal Rule of Criminal Procedure 41(f)(1)(C) would not entitle defendant to suppression when defendant was shown a copy of the warrant at scene of search, rendering it "difficult to imagine what prejudice he could have suffered if the agents did not leave a copy of the warrant at the house as well").

Nevertheless, we remind law enforcement officers that their utmost attention to detail is required when seeking and executing search warrants. Rule 41's procedural safeguards "are intended 'to secure the citizen against carelessness and abuse in the issuance and execution of search warrants.'" Coffee, 54 S.W.3d at 233 (quoting Talley v. State, 345 S.W.2d 867, 869 (Tenn. 1961)). A police officer's duty to protect the citizens within her jurisdiction includes the duty to act with due care in the seeking and execution of search warrants, including the requirements set forth in Rule 41 and any applicable statutes.

In light of our holding, we conclude that the trial court's grant of the Defendant's motion to suppress on the grounds that Officer Valentin failed to comply with Rule 41(e)(4) must be reversed.

## Conclusion

We reverse the grant of the Defendant's motion to suppress and remand this matter to the trial court for further proceedings consistent with this opinion.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

12